**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW MEXICO**

| | |
|---|---|
| CODY A. ROGERS, on behalf of himself and all others similarly situated<br><br>**Plaintiff,**<br><br>v.<br><br>**3BEAR ENERGY, LLC**<br><br>**Defendant.** | Case No. 1:21-cv-376<br><br>**JURY TRIAL DEMANDED**<br><br>Class & Collective Action |

## COMPLAINT

### SUMMARY

1. Plaintiff Cody A. Rogers ("Rogers" or "Plaintiff"), on behalf of himself and all others similarly situated brings this lawsuit to recover unpaid overtime wages and other damages from 3Bear Energy, LLC ("3Bear") under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA").

2. Rogers worked for 3Bear as an Inspector.

3. Rogers' duties and the duties of the Day Rate Inspectors (as defined below) included inspecting the interstate pipelines to ensure the safe transportation of goods.

4. Instead of paying overtime as required by state and federal law, 3Bear paid Rogers and those similarly situated to him a daily rate with no overtime pay.

5. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a significant portion of the facts giving rise to this lawsuit occurred in this District. Specifically, Plaintiff Rogers worked for 3Bear in this District and Division.

## THE PARTIES

9. Rogers worked for 3Bear as a Chief Inspector from on or about March 2018 through on or about April 2019.

10. Rogers' consent to be a party plaintiff is attached as **Exhibit A**.

11. Throughout his employment, 3Bear paid Rogers a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

12. Rogers represents at least 2 classes of similarly situated co-workers

13. First, Rogers brings this action on behalf of himself and all other similarly situated workers paid by 3Bear's day rate system.

14. 3Bear paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The FLSA class of similarly situated workers consists of:

> **All pipeline inspectors employed by or performing work on behalf of 3Bear and paid a day rate without overtime during the past three years (the Day Rate Workers).**

16. Second, Rogers represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

17. The NMMWA Class is defined as:

> **All pipeline inspectors employed by or performing work on behalf of 3Bear in New Mexico while paid a day rate without overtime during the past three years (the New Mexico Workers).**

18. The members of the FLSA and NMMWA Classes ("Putative Class Members") can be readily ascertained from 3Bear's records.

19. Defendant 3Bear Energy, LLC is a foreign limited liability company with its headquarters in Denver, Colorado and can be served with process by serving its registered agent, James B. Martin, 500 Don Gaspar Street, Santa Fe, NM 87505.

## COVERAGE UNDER THE FLSA

20. At all times hereinafter mentioned, 3Bear was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all times hereinafter mentioned, 3Bear was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22. At all relevant times, 3Bear has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. At all relevant times, 3Bear has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

24. In each of the past 3 years, 3Bear's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

25. Indeed, Rogers and the Putative Class Members were engaged in commerce in foreign and/or interstate commerce and work on the channels and instrumentalities of interstate commerce, including but not limited to oil and gas pipelines across the country

26. At all relevant times, Rogers and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

27. 3Bear uniformly applied its policy of paying its Inspectors, including Rogers, a day rate with no overtime compensation.

28. 3Bear applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

29. By paying its Inspectors a day rate with no overtime compensation, 3Bear violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

30. As a result of this policy, Rogers and the Day Rate Workers do not receive overtime as required by the FLSA.

31. 3Bear's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

32. 3Bear operates a full-service midstream energy company specializing in greenfield project development and designs, constructs, operates and maintans crude oil, gas, and water pipeline gathering and mainline systems. 3Bear hires personnel (like Rogers and similarly situated Inspectors) to perform quality audit work on the pipeline systems.

33. 3Bear owns and operates pipelines.

34. 3Bear relies on Inspectors to provide inspection services so it the pipelines can safely transport goods.

35. 3Bear is responsible for maintaining pipelines so they may safely move goods across state lines as a stream of interstate commerce.

36. Rogers and the Putative Class Members are responsible for the safe installation and operation of pipeline and provide necessary inspection services to oil and gas pipelines across the country.

37. The Pipeline and Hazardous Materials Administration, a division of the U.S. Department of Transportation, regulates pipeline safety and sets safety standards that Inspectors, such as Rogers and the Putative Class Members, must follow.

38. Indeed, Rogers and the Putative Class Members inspect the work on oil and gas pipelines in order to ensure the pipelines are constructed in accordance with 3Bear's standards, protocols, and construction plans, as well as federal and state regulations.

39. Without the inspection services Rogers and the Putative Class Members provide to 3Bear, oil and gas would not be able to travel across state lines through the pipelines on which Rogers and the Putative Class Members work.

40. Indeed, the inspection services Rogers and the Putative Class Members provide to 3Bear is necessary to keep the intra- and interstate flow of oil and gas.

41. Rogers and the Inspectors, in part, ensure 3Bear's appropriate compliance with state and federal safety and regulatory requirements.

42. The Pipeline and Hazardous Materials Safety Administration sets federal standards to which pipelines must comply with in their operation.

43. Rogers and the Inspectors assist 3Bear in meeting all operation requirements set forth by The Pipeline and Hazardous Materials Safety Administration on a federal level and related state agencies.

44. The inspection services Rogers and the Putative Class Members provide to 3Bear immediately and necessarily precedes the action of oil and gas flowing along interstate pipelines across the country.

45. Rogers and the Putative Class Members' work is centered on ensuring the safe transport of oil and gas along intra- and interstate pipelines across the country by making sure the pipelines necessary to transport oil and gas to its ultimate destination are constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

46. Rogers and the Putative Class Members used tools, equipment, and consumables in their work interstate on oil and gas pipeline and related infrastructure.

47. Rogers and the Putative Class Members are involved in the building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

48. Rogers and the Putative Class Members work alongside other workers who are themselves engaged in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

49. Rogers and the Putative Class Members are essential to 3Bear's operations.

50. 3Bear's pipelines exist as a conduit, much like roads or railways, to allow goods to enter and take part in interstate commerce.

51. Throughout Rogers' employment with 3Bear, 3Bear paid him on a day rate basis.

52. Rogers and the Putative Class Members work for 3Bear under its day rate pay scheme.

53. Rogers and the Putative Class Members do not receive a salary.

54. If Rogers and the Putative Class Members did not work, they did not get paid.

55. Rogers and the Putative Class Members receive a day rate.

56. Rogers and the Putative Class Members do not receive overtime pay, despite the fact that they often worked 10 or more hours a day, for 7 days a week, for weeks at a time.

57. For example, Rogers received a day rate for each day he worked for 3Bear.

58. Although he typically worked 6 to 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

59. Rogers and the Putative Class Members received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

60. Rogers and the Putative Class Members are not employed on a salary basis.

61. Rogers and the Putative Class Members do not, and never have, received guaranteed weekly compensation from 3Bear irrespective of the days worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

62. Rogers and the Putative Class Members work in accordance with the schedule set by 3Bear.

63. 3Bear controls Rogers and the Putative Class Members' pay.

64. Likewise, 3Bear controls Rogers and the Putative Class Members' work.

65. 3Bear requires Rogers and the Putative Class Members to follow its policies and procedures.

66. Rogers and the Putative Class Members work must adhere to the quality standards put in place by 3Bear.

67. Rogers and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

68. Rogers and the Putative Class Members were responsible for ensuring their work was completed according to established guidelines, specifications, and restrictions.

69. Rogers and the Putative Class Members perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

70. At all relevant times, 3Bear maintained control over Rogers and the Putative Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

71. Rogers and the Putative Class Members do not have the power to hire or fire any employees.

72. Rogers' working relationship with 3Bear is similar to 3Bear's relationship with the Putative Class Members.

73. 3Bear's records reflect the fact that Rogers and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

74. 3Bear does not pay Rogers or the Putative Class Members overtime for hours worked in excess of 40 in any of those weeks.

75. Instead, 3Bear pays Rogers and the Putative Class Members on a day rate basis.

76. 3Bear controls all the significant or meaningful aspects of the job duties Rogers and the Putative Class Members perform.

77. 3Bear exercises control over the hours and locations Rogers and the Putative Class Members work, the tools and equipment they use, the reports they provide, the hours they record on their timesheets, and the rates of pay they receive.

78. Very little skill, training, or initiative is required of Rogers and the Putative Class Members to perform their job duties.

79. Indeed, the daily and weekly activities of Rogers and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by 3Bear.

80. Virtually every job function is predetermined by 3Bear, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

81. 3Bear prohibits Rogers and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Rogers and the Putative Class Members to follow 3Bear's policies, procedures, and directives.

82. All of 3Bear's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures that dictate the day-to-day activities they perform.

83. All of 3Bear's Day Rate Inspectors work similar hours and are denied overtime as a result of the same illegal pay practice.

84. All of 3Bear's Day Rate Inspectors work in excess of 40 hours each week and often work 84+ hours in a workweek.

85. 3Bear uniformly denies Rogers and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

86. Rogers and the Putative Class Members are not employed on a salary basis.

87. 3Bear's policy of paying Rogers and the Putative Class Members a day rate with no overtime compensation violates the FLSA because it deprives Rogers and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

88. 3Bear knew Rogers and the Putative Class Members worked more than 40 hours in a week.

89. 3Bear knew, or showed reckless disregard for, whether the Rogers and the Putative Class Members were entitled to overtime under the FLSA.

90. Nonetheless, 3Bear failed to pay Rogers and the Putative Class Members overtime.

91. 3Bear willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

92. Rogers incorporates the preceding paragraphs by reference.

93. By failing to pay Rogers and those similarly situated to him overtime at one-and-one-half times their regular rates, 3Bear violated the FLSA's overtime provisions.

94. 3Bear owes Rogers and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

95. Because 3Bear knew, or showed reckless disregard for whether, its pay practices violated the FLSA, 3Bear owes these wages for at least the past three years.

96. 3Bear is liable to Rogers and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

97. Rogers and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### NMMWA VIOLATIONS

98. Rogers incorporates the preceding paragraphs by reference.

99. Rogers brings this claim under the NMMWA as a Rule 23 class action.

100. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

101. At all relevant times, 3Bear was subject to the requirements of the NMMWA.

102. At all relevant times, 3Bear employed Rogers and each New Mexico Worker as an "employee" within the meaning of the NMMWA.

103. The NMMWA requires employers like 3Bear to pay employees at one-and-one-half times their regular rates for hours worked in excess of 40 hours in any workweek. Rogers and the New Mexico Workers are entitled to overtime pay under the NMMWA.

104. 3Bear had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

105. Rogers and the New Mexico Workers seek unpaid overtime in amount equal one- and-one-half times their regular rates for work performed in excess of 40 hours in a workweek,

prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

106.   Rogers and the New Mexico Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by 3Bear, as provided by the NMMWA.

107.   The improper pay practices at issue were part of a continuing course of conduct, entitling Rogers the New Mexico Workers to recover for all such violations, regardless of the date they occurred.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

108.   Rogers incorporates all previous paragraphs and alleges that the illegal pay practices 3Bear imposed on them were likewise imposed on the members of the class.

109.   Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

110.   Dozens of other individuals who worked with Rogers indicated they were paid in the same manner, performed similar inspection work, and were not properly compensated for all hours worked as required by state and federal wage laws.

111.   3Bear employed dozens of Day Rate Workers across the country, and also employed dozens of New Mexico Workers in New Mexico. As a result, joinder of their individual claims is impracticable, and a class and collective action serves the interests of judicial economy.

112.   Based on his experiences and tenure with 3Bear, Rogers is aware that 3Bear's illegal practices were imposed on other Putative Class Members.

113.   The Putative Class Members were all denied overtime compensation when they worked in excess of forty 40 hours per week.

114.   3Bear is an "employer" of Rogers and the Putative Class Members.

115. 3Bear's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

116. Rogers' experiences are therefore typical of the experiences of the Putative Class Members.

117. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

118. Rogers has no interests contrary to, or in conflict with, the Day Rate Workers or the New Mexico Workers.

119. Rogers has an interest in obtaining the unpaid overtime wages owed under state and/or federal law just like the Day Rate Workers and the New Mexico Workers.

120. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

121. Absent this action, many Day Rate Workers and New Mexico Workers likely will not obtain redress of their injuries and 3Bear will reap the unjust benefits of violating the FLSA and the NMMWA.

122. Furthermore, even if some of the Putative Class Members could afford individual litigation against 3Bear, it would be unduly burdensome to the judicial system.

123. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

124. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members.

125. Among the common questions of law and fact are:

    (a) Whether 3Bear employed the members of the class within the meaning of the FLSA and the NMMWA;

    (b) Whether 3Bear's failure to pay overtime was made in good faith;

    (c) Whether 3Bear's violation of the law was willful; and

    (d) Whether 3Bear's illegal pay practices were applied uniformly to the Day Rate Workers and the New Mexico Workers.

126. Rogers's claims are typical of the claims of the other Day Rate Workers and New Mexico Workers.

127. All Day Rate Workers and New Mexico Workers, including Rogers, sustained damages arising out of 3Bear's illegal and uniform employment policy.

128. Rogers knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or a collective action.

129. Even if the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

130. Rogers hereby demands a trial by jury.

### PRAYER

131. WHEREFORE, Rogers prays for judgment against 3Bear as follows:

    a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

    b) For an order pursuant to section 16(b) of the FLSA finding 3Bear liable for all unpaid overtime and an equal amount of liquidated damages;

    c) For an order designating the New Mexico Workers NMMWA claims as a class action pursuant to FED. R. CIV. P. 23;

    d) For an order finding 3Bear liable for all unpaid overtime owed under NMMWA at the highest available rates allowed by law;

e)  For an order appointing Rogers and his counsel to represent the interests of the federal collective and the Rule 23 Class;

f)  For an order awarding Rogers, the Day Rate Workers, and the New Mexico Workers their costs;

g)  For an order awarding Rogers, the Day Rate Workers, and the New Mexico Workers their attorneys' fees;

h)  For an order awarding Rogers, the Day Rate Workers, and the New Mexico Workers pre- and post-judgment interest at the highest rates allowed by law; and

i)  For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar 24014780
    **Andrew W. Dunlap**
    Texas Bar 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

AND

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
**ATTORNEYS FOR PLAINTIFF**