IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CODY A. ROGERS, on behalf of himself
and all others similarly situated,

    Plaintiff,

vs.                                                       Civ. No. 21-0376 KG/SCY

3BEAR ENERGY, LLC,

    Defendant,

and

Applied Consultants, LLC,

    Intervening Defendant.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Intervenor Applied Consultants, LLC's (Applied) Motion to Compel Arbitration (Doc. 32), which is fully and timely briefed (Docs. 33, 34).[1] Having considered the briefing and the applicable law, and being otherwise fully advised, the Court grants the Motion to Compel Arbitration.

I.    *Factual and Procedural Background*

3Bear is a midstream operator in the oil and gas industry. Applied is a pipeline inspection company that provides third-party inspection services to its customers, including 3Bear. 3Bear contracted with Applied for inspection services on pipeline and midstream facility construction projects. 3Bear paid Applied "a stipulated rate to compensate it for the services that

---

[1] Defendant 3Bear Energy, LLC (3Bear) also filed a Motion to Compel Arbitration (Doc. 9), which is fully and timely briefed (Docs. 16, 21). 3Bear and Plaintiff Cody Rogers also submitted subsequent Notices of Supplemental Authority and responses thereto. (Doc. 29, 30, 35, 41). Because the Court grants Applied's Motion, 3Bear's Motion is denied as moot.

it provided; this rate was all-inclusive, covering overhead, profit, equipment, material, salary, benefits, and all applicable taxes and withholding under federal and state law, including contributions under the [FICA] and Federal Unemployment Tax Act." (Doc. 9-1) at ¶ 8 (Decl. of Jennifer Lacy (Lacy Decl.)). "Applied [ ], in turn, pa[id] its personnel in the manner that it alone determined was warranted." *Id.*

For its part, Applied hired, paid, and classified inspectors, like Plaintiff Cody Rogers (Rogers), as employees. Applied created and stored human-resource related documents that Rogers completed at the onset and during the course of his employment. As a condition of employment, Applied required Rogers (and its other employees) to enter into an arbitration agreement and waiver of class and collective action claims—the Mutual Arbitration Agreement (MAA). *Id.* at ¶ 11; *see also* (Doc. 9-1) at 6-7 (MAA).

Rogers does not dispute—nor could he—that he has a valid arbitration agreement with Applied. The MAA contains a delegation clause that clearly and unmistakably commits threshold questions of arbitrability to the arbitrator. MAA at ¶ 4 ("Arbitration shall be conducted in accordance with the American Arbitration Association Employee Arbitration Rules ("AAA Rules").).

Rogers signed at least fifteen (15) documents identifying himself as an employee of Applied. *See generally* (Doc. 9-1) at 6-40. Once Rogers signed all the paperwork and executed the MAA, Applied then assigned Rogers as a Chief Inspector on the Applied team providing inspection services to 3Bear. Applied paid Rogers a "day rate," which included a guaranteed minimum weekly amount. Applied further determined Rogers' duties. Based on Rogers' duties and pay arrangement, Applied determined that Rogers qualified as exempt under federal and

state wage-and-hour laws, such that Applied did not pay Rogers overtime, no matter how many hours he worked in a given week.

This pay arrangement gave rise to the instant lawsuit. However, rather than suing Applied, which hired and paid him, Rogers sued only Applied's customer, 3Bear. As explained in greater detail below, Rogers alleged that 3Bear – not Applied – is his employer. Despite the numerous agreements Rogers signed with Applied, and the fact that Applied paid Rogers, *see* (Doc. 9-1) at 25-40 (Earnings Statements issued by Applied to Rogers), Rogers omits any mention whatsoever of Applied in his Complaint.

Applied moved to intervene in this case on June 21, 2021. (Doc. 10). Rogers "cho[se] not to oppose Applied's motion to intervene," but made clear that he did not agree Applied should be in the case. (Doc. 26) at 1. As a result, Applied was allowed to intervene on December 3, 2021. (Doc. 31). The instant Motion to Compel Arbitration promptly followed on December 6, 2021. (Doc. 32).

II.   *Legal Standards*

Arbitration is a matter of contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). As a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, requires courts to enforce arbitration agreements according to their terms. *Lamps Plus, Inc. v. Varela*, --- U.S. ---, 139 S. Ct. 1407, 1412 (2019). Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, what issues they will arbitrate, which rules they will follow in arbitration, and who the arbitrators will be. *Id.* at 1416.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "While ambiguities in the language of the agreement should be resolved in favor of arbitration," courts do not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citations and quotation marks omitted); *see also Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006) ("Absent some ambiguity in the arbitration agreement, it is the language of the contract that defines the scope of disputes subject to arbitration. As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). Put another way, "[a]rbitration . . . is a matter of consent, not coercion." *Waffle House*, 534 U.S. at 294; *see also Image Software*, 459 F.3d at 1055 ("The FAA manifests a liberal federal policy favoring arbitration. Nonetheless, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Generally, when the parties disagree on whether an arbitration clause applies to a particular controversy, it is a question of law for a court to decide. *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145 (10th Cir. 2014). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, --- U.S. ---, 139 S. Ct. 524, 528 (2019).

4

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute, but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein*, 139 S. Ct. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). This is known as a delegation provision or a delegation clause. An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 70). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* Put another way, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530. In a case involving a delegation clause, a challenge to the arbitration agreement as a whole is insufficient: the party seeking to avoid arbitration must specifically challenge the delegation clause. *Rent-A-Center*, 561 U.S. at 70, 72. In that case, the court must address the challenge to the delegation clause.

"[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). In New Mexico:

> When a broad and general arbitration clause is used . . . the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specifics areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate.

*K.L. House Constr. Co. v. City of Albuquerque*, 1978-NMSC-025, ¶ 8. To determine whether the contract limits the scope, a court must deduce the intent of the parties from the plain language of

the agreement. *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23. "As a general rule, the words employed will be assigned their ordinary meaning unless it is shown that the parties used them in a different sense." *Levenson v. Mobley*, 1987-NMSC-102, ¶ 8. "A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." *Bank of New Mexico v. Sholer*, 1984-NMSC-118, ¶ 6 (citing *Brown v. Am. Bank of Commerce*, 1968-NMSC-096, 79 N.M. 222 (1968)).

The Court must decide, in the first instance, whether a valid arbitration exists, and if so, whether the delegation clause "delegate[s] threshold arbitrability questions to the arbitrator . . . by 'clear and unmistakable' evidence." *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options*, 514 U.S. at 944). The Tenth Circuit has held that incorporating the American Arbitration Association Employment Arbitration Rules (AAA Rules) into an arbitration agreement "clearly and unmistakably evinces [the parties'] intent to arbitrate arbitrability." *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018).

To make these decisions, courts in the Tenth Circuit apply a summary judgment-style analytical framework: "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608, 612 (10th Cir. 2014).

III.  *Discussion*

Applied and Rogers entered into a broad arbitration agreement when they executed the MAA. In relevant part, the MAA provides that "[Rogers] and [Applied] agree to arbitrate all

claims that have arisen or will arise out of [Rogers'] employment with or termination from the Company regardless of whether those are claims under common law or under statutory law." (Doc. 9-1) at 6 (MAA, ¶ 2). This provision is sufficiently broad to encompass Rogers' claims against 3Bear. As more fully explained herein, the Court grants Applied's Motion to Compel Arbitration and denies as moot 3Bear's Motion to Compel.

Applied seeks to compel Rogers to arbitrate his claims against 3Bear, and to do so in individual arbitration. Applied argues that the plain language of the MAA extends to Rogers' claims against 3Bear. Applied contends it can enforce the MAA against Rogers, and that the MAA requires Rogers to "arbitrate all claims that have arisen or will arise out of [Rogers'] employment," including claims against 3Bear. (Doc. 32) at 2. Because Rogers' claims against 3Bear arose out of his employment with Applied, Applied urges the Court to compel Rogers to honor his promises and arbitrate the claims he has brought here. In response, Rogers argues he agreed to arbitrate only claims or controversies that may arise with *Applied* and, since he has not sued Applied, there are no claims to arbitrate. Rogers insists he never agreed to arbitrate claims with 3Bear and the MAA with Applied does not address and does not apply to his claims against 3Bear.

As an initial matter, Rogers wishes to frame the issue as "'who must arbitrate' rather than 'what must be arbitrated.'" (Doc. 33) at 3 (citing *Weckesser v. Knight Enterprises S.E., LLC*, 735 Fed. Appx. 816, 821 (4th Cir. 2018)). The Court cannot agree.

That Rogers has a valid arbitration agreement with Applied is undisputed. The MAA contains a delegation clause which clearly and unmistakably commits threshold questions of arbitrability to the arbitrator. MAA at ¶ 4 ("Arbitration shall be conducted in accordance with the American Arbitration Association Employee Arbitration Rules ("AAA Rules"). The AAA

Rules, for their part, provide that the arbitrator has the authority to rule on her own jurisdiction, including objections regarding the existence, scope, or validity of any arbitration agreement. AAA Employment Rules, § 6(a).

While Rogers wishes to frame the issue as "who must arbitrate," the answer is clear: Rogers must arbitrate. The question is whether the MAA between Rogers and Applied, which Applied can enforce, is broad enough to cover Rogers' claim against 3Bear. The Court need not consider whether 3Bear could independently enforce the MAA because Applied seeks its enforcement in this case.

Given the delegation clause, this Court lacks the authority to decide whether this claim falls within the MAA and must instead grant Applied's Motion to Compel Arbitration and commit such decisions to the arbitrator.

IV.   *Conclusion*

For the reasons discussed above, the Court grants Applied's Motion to Compel Arbitration and denies as moot 3Bear's Motion.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE